IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to All Cases. | 18-md-2865 (LAK)<br><br>**Request for International Judicial Assistance** |

The United States District Court for the Southern District of New York presents

its compliments to the High Court of the British Virgin Islands, and requests international

judicial assistance to obtain evidence to be used in a civil proceeding before this court in the

above captioned matter. This request is made under section 3 of the Evidence (Proceedings in

Foreign Jurisdictions) Ordinance 1988.

This Court requests the assistance described herein as necessary in the interests of

justice. The assistance requested is that the appropriate judicial authority of the British Virgin

Islands compel Harneys Corporate Services Limited to provide the documents set forth below for

use at trial or in a dispositive motion.

## PERSON TO BE SERVED

1.        Harneys Corporate Services Limited, Craigmuir Chambers, PO Box 71, Road

Town, Tortola, British Virgin Islands VG1110 ("Harneys").

## BACKGROUND REGARDING THIS CIVIL PROCEEDING

2.        In May and June 2018, Plaintiff Skatteforvaltningen ("SKAT") filed 140 similar

complaints in eleven different federal judicial districts. On October 3, 2018, the federal

complaints were consolidated in this Multi-District Litigation ("MDL") and assigned to the

1

Honorable Lewis A. Kaplan.  On February 26, 27, and 29, 2019, SKAT filed 43 additional

complaints, which were consolidated into the MDL assigned to Judge Kaplan.  On November 19,

2019, SKAT filed an additional related complaint, which has also been incorporated into the

MDL.

      3.          This case stems from an allegedly fraudulent tax refund scheme to deceive SKAT

into paying out over 12.7 billion Danish Kroner ("DKK"), the equivalent of approximately $2.1

billion (US) of allegedly withheld dividend tax.  Over 300 entities falsely claimed tax refunds

from SKAT (the "SKAT Refund Claimants").  The SKAT Refund Claimants purported to own

shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks

in Denmark.  Danish companies are required to withhold 27% tax on dividends they pay to

shareholders.  Under certain double taxation treaties between Denmark and other countries,

including the United States, this tax is reimbursable to certain non-Danish shareholders.  SKAT

Refund Claimants that were based in the United States, along with certain of their affiliated

individuals, are the Defendants in this MDL.

      4.          The SKAT Refund Claimants, acting through their agents and representatives,

applied to SKAT claiming repayments of tax withheld on dividends that they purported to have

earned on shares of Danish companies that they claimed to hold.  These applications are alleged

to have been fraudulent because the claimants did not own the shares that they claimed to own,

did not earn the dividends they claimed to have earned, and were not entitled to the tax refunds

they claimed.  Based on the allegedly fraudulent tax refund claims submitted by the Defendants

in the MDL, SKAT asserts that it paid baseless withholding tax refund claims of approximately

$1,234,288,400 (US).

5.        The Defendants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own. The Defendants each submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares of Danish companies the claimants purported to own. These claims were submitted through payment agents, which in turn submitted the claims by mail or email transmission to SKAT. Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher," or similar document created by a custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

6.        The Defendants are alleged to have used a number of entities for whom Harneys acts or previously acted as registered agent in the BVI (the "BVI Third Parties") to conduct the fraudulent transactions that purport to evidence the Defendants' purchase of shares, and to channel the refund payments from SKAT in a way that obfuscated the true beneficiaries of the refund claims. SKAT alleges that the BVI Third Parties were ultimately owned by, controlled by, and/or operated for the benefit of the Defendants in these proceedings and in related proceedings in other jurisdictions.

7.        The BVI Third Parties are: Acai Investments Limited; Akishah Ltd; Al Msalli Ltd; Allitsen Asset Ltd; Ampersand  Capital Limited; Baja Ventures Ltd; Brazzle Limited; Campdown Limited; Ceptorbay Limited; Connaught Global Ltd; Darliz Ltd; Diverse Vision Limited; DTS Capital Limited; Encoreelite Limited; Equal Services Limited; FinTech Consultancy Ltd; Fire Capital One Limited; Gartside Global Ltd; Gnosis Capital Ltd; Ice Rock Limited; IP Universal Limited; Ladhi Ltd; Lyall Capital Ltd; Nisus Financial Ltd; NNPA Ltd; Oakholley Ltd; Parla Global Investments Limited; Philo Capital Ltd; Philo Holdings Limited;

Prince Solutions Limited; Principle Markets Limited; Rhaltall Limited; Rheidol Trading Ltd;

Sciron Capital Limited; Sole Capital Limited; Stratina Holdings Corp; Tappleton Limited;

TechEvolve Ltd; Tehvah Global Ltd.; Trance Services Limited; Treehurst Limited; Ystwyth

Trading Ltd; and Zeta Financial Partners Limited.

## SKAT'S FACTUAL ALLEGATIONS

8.      The allegations in SKAT's complaints in the consolidated actions are

substantially similar. SKAT brought complaints against the Defendants that submitted

fraudulent dividend withholding tax refund claims to SKAT and various individuals and entities

who formed partnerships with Defendants, helped structure the dividend withholding tax refund

scheme, and coordinated the submission of fraudulent tax refund claims to SKAT. The

complaints allege that between 2012 and 2015, Defendants submitted fraudulent requests for tax

refunds to SKAT. Plaintiff SKAT asserts claims for fraud, aiding and abetting fraud, payment

by mistake, unjust enrichment, negligent misrepresentation, and related claims. SKAT's case is

that the Defendants used the BVI Third Parties and other offshore companies to advance their

fraudulent scheme and conceal their involvement in it.

## THIS COURT HAS GRANTED SKAT'S REQUEST
## TO ASSIST IN THE PROCURING OF EVIDENCE ABROAD

9.      On April 27, 2020, SKAT filed a motion with this Court seeking the Court's

assistance in facilitating discovery in respect of each of the BVI Third Parties from Harneys.

That motion was granted by this Court on June 30, 2020.

10.      Under principles of international comity, this Court writes to request that Harneys

be required to provide SKAT the documents set forth below for use at trial or in a dispositive

motion. These documents are likely to demonstrate that Defendants in these proceedings and in

related proceedings in other jurisdictions owned, controlled, or were benefited by the operation

of the BVI Third Parties, and will also reveal the relationships between the BVI Third Parties

and Defendants in the common fraudulent scheme.  Confirmation that Defendants in these

proceedings and in related proceedings in other jurisdictions owned, controlled, or benefited

from the operation of the BVI Third Parties and the relationship between the Defendants and the

BVI Third Parties bears directly on SKAT's case against the Defendants, and, therefore, their

disclosure is necessary for the purposes of justice.

## DOCUMENTS AND INFORMATION TO BE PRODUCED

11.        Harneys should be required to produce, in respect of each of the BVI Third

Parties, the following documents:

a.  Register of shareholders;

b.  Register of directors;

c.  Customer due diligence records obtained by Harneys pursuant to the Anti-Money
Laundering Regulations, 2008 (as amended);

d.  Documents obtained by Harneys to identify the beneficial owners of the BVI
Third Parties pursuant to the Beneficial Ownership Secure Search System Act
2017 (as amended) and the Anti-Money Laundering Regulations, 2008 (as
amended);

e.  Beneficial ownership records entered in Harney's RA Database pursuant to the
Beneficial Ownership Secure Search System Act 2017 (as amended);

f.  Statements of account prepared by voluntary liquidators of the BVI Third Parties
pursuant to the BVI Business Companies Act 2004 (as amended);

g.  Records and underlying documentation sufficient to show and explain the BVI
Third Parties' transactions and to enable the financial position of the BVI Third

Parties to be determined with reasonable accuracy prepared pursuant to the BVI Business Companies Act (as amended);

h.  Correspondence between clients of record and Harneys;

i.  Correspondence between introducers and Harneys;

j.  Correspondence between directors and Harneys;

k.  Agreements for the provision of registered agent services between Harneys and the BVI Third Parties, or those acting on their behalf; and

l.  Invoices issued by Harneys to the BVI Third Parties, or those acting on their behalf, and payment records showing the payment of such invoices, including but not limited to:

    i.  the bank details from which payments were made

    ii.  supporting information to enable payments to be made including payee due diligence records obtained.

12.  All documents should be duly marked for identification.

13.  A director or other authorized person of Harneys should be ordered to provide an affidavit certifying that the documents produced were kept in the ordinary course of business, in substantially the form attached as Schedule A hereto ("Business Records Certification").

14.  If, for any reason, it is not possible for a director or other authorized person to provide a Business Records Certification, a director or other authorized person of Harneys should be ordered to provide oral testimony under oath on the areas of inquiry set out in Schedule B before an examiner appointed by the High Court of the British Virgin Islands.

## INSTRUCTIONS

15.    I would ask that you cause the attorneys for SKAT to be provided with any

documents or other evidence produced by Harneys pursuant to this request. Their details are as

follows:

Neil J. Oxford
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6843
Email: neil.oxford@hugheshubbard.com

Timothy de Swardt
Kobre & Kim (BVI) LP
Commerce House, Waterfront Drive
Road Town, Tortola, VG1110
Tel.: (284) 852 1631
Email: timothy.deswardt@kobrekim.com

## TIME OF EXECUTION OF REQUEST

16.    It is requested that this request be processed as expeditiously as possible.

## SPECIFIC REQUESTS

17.    It is requested that should any part of this Request be refused on legal grounds,

such refusal should not affect the remainder of the requests.

18.    SKAT stands ready, willing, and able to reimburse the High Court of the British

Virgin Islands for all reasonable costs incurred in executing the undersigned judicial authority's

request for international judicial assistance.

19.    The Court appreciates the assistance of the High Court of the British Virgin

Islands in obtaining evidence in this matter and is willing to provide similar assistance to judicial

authorities in the British Virgin Islands if and when required.

WITNESS, the Honorable Lewis A. Kaplan, District Judge, United States District

Court for the Southern District of New York, the ⸺ day of ⸺ 2020.

Respectfully submitted,

The Hon. Lewis A. Kaplan
District Judge
United States District Court
Southern District of New York

8

## SCHEDULE A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to All Cases. | **AFFIDAVIT OF** _____<br><br>18-md-2865 (LAK) |

I, [NAME], a citizen of [STATE] residing at [ADDRESS], MAKE OATH and say as follows:

    1.    I am currently employed by _____ ("<u>Registered Agent</u>"). My official title is _____.

    2.    By reason of my position and experience, I am a duly authorized custodian of records, or qualified witness, for the Registered Agent, and have authority to certify the records herein described.

    3.    In response to an order of High Court of the British Virgin Islands dated _____, ordering the production of documents identified in a Letter of Request from the District Court of the Southern District of New York dated _____, the Registered Agent produced [identification of documents, such as production volume or Bates number] to Neil J. Oxford, Esq., counsel for Skatteforvaltningen in this matter.

    4.    I certify that, aside from the production number, the records listed above are true and correct copies of records extracted from the Registered Agent's business records maintained in the ordinary course of its business.

5.    The records listed above were:

a.    Made or received by the Registered Agent's personnel at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, persons with knowledge of those matters;

b.    Kept by the Registered Agent's personnel in the course of the Registered Agent's regularly conducted business activities; and

c.    Made or received as part of the regular practice of the Registered Agent's regularly conducted business activities.

I certify under penalty of perjury that the foregoing is true and correct.

Sworn by the within named [NAME]                )
                                                )
                                                )
On [DATE]                                       )        [Signature of witness]
                                                )
                                                )
Before me: _____          )
NOTARY PUBLIC/COMMISSIONER OF OATHS              )

10

## SCHEDULE B

<u>AREAS OF ENQUIRY</u>

1.  Whether the documents produced by Harneys pursuant to this letter of request are:

    a.  True and correct copies of records extracted from Harneys' business records maintained in the ordinary course of its business.

    b.  Made or received by Harneys' personnel at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, persons with knowledge of those matters;

    c.  Kept by Harneys' personnel in the course of Harneys' regularly conducted business activities; and

    d.  Made or received as part of the regular practice of Harneys' regularly conducted business activities.